IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| RESSLER HARDWOODS AND | * | CHAPTER 7 |
| FLOORING, INC., | * | |
|     Debtor | * | |
| | * | CASE NO. 1:08-bk-01878MDF |
| ROBERTA A. DeANGELIS, | * | |
| Acting United States Trustee, | * | |
|     Movant | * | |
| | * | |
|     v. | * | |
| | * | |
| JACQUES H. GEISENBERGER, JR., P.C., | * | |
|     Respondent | * | |

## OPINION

Before me is the Amended Motion of Roberta A. DeAngelis, the Acting United States Trustee ("UST"), to disqualify Jacques H. Geisenberger, Jr. ("Geisenberger") and his law firm, Jacques H. Geisenberger, Jr., P.C.,[1] as counsel for Ressler Hardwoods & Flooring, Inc. ("Debtor") and to require disgorgement of the professional fees that he received through Debtor's bankruptcy case. Many of the events that form the basis for this Motion are chronicled in an Opinion that I issued on March 19, 2010 in the related adversary case, *Little vs. Ressler Hardwoods, Inc., et al.*, Adv. No. 1:08-ap-00109MDF (the "Little Adversary"). However, the issues of law in the above-captioned matter differ substantially from those present in the Little Adversary. Therefore, it is appropriate to state the relevant facts anew, rather than adopt by reference the findings of the March 19 Opinion.

---

[1] The result I reach in this Opinion affects both Jacques Geisenberger and his law firm in identical ways. There is no reason to distinguish between the professional corporation and its principal for purposes of this Opinion. Therefore, although the Application for Employment now at issue was nominally filed on behalf of the professional corporation, I will use the abbreviated term "Geisenberger" to refer to both Geisenberger and his firm interchangeably.

## I. Procedural History

Debtor filed a chapter 11 petition on May 27, 2008. Along with the petition Debtor filed an Application to Employ Geisenberger as its bankruptcy counsel ("the Application"). Based on the representations contained in the filed documents, and in the absence of any objection to Geisenberger's employment, the Court entered an Order approving the Application on June 26, 2008.

On March 30, 2009, the UST filed a motion to disqualify Geisenberger and to compel disgorgement of fees. On May 13, 2009, the UST amended her motion following entry of the Court's decision in the Little Adversary. Geisenberger answered the amended motion, and after several continuances, a hearing was held on the matter on December 10, 2009.

On January 26, 2010, Debtor's chapter 11 case was converted to chapter 7.[2]

## II. Factual Findings

During the time relevant to this case, Debtor was a flooring manufacturer owned and operated by Kenneth and Karen Ressler and their son, Keith Ressler (collectively "the Resslers").

In October 2006, Debtor contacted Geisenberger seeking representation in a dispute with Erie Insurance Company ("Erie"). Debtor had been unable to obtain prompt payment of a claim for damages following a fire at Debtor's production facility. In the ensuing months, Geisenberger represented Debtor in its dispute with Erie and in connection with other business matters, including the lease of property used in Debtor's milling operation, defaults on a loan

---

[2] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(B), and (O). This Opinion constitutes the findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is applicable to contested matters under Fed. R. Bankr. P. 9014.

2

with Sovereign Bank ("Sovereign"), and the sale of a majority interest in the business to Little. Despite the apparent depth of Geisenberger's involvement in Debtor's legal and financial difficulties, the attorney/client relationship was not formally documented until May 7, 2007 when Geisenberger sent correspondence ("the Engagement Letter") to the Resslers to confirm his retention as Debtor's attorney.[3] The Engagement Letter lists as its subject "Various Problems" and provides an internal file number assigned by Geisenberger's firm. The body of the letter refers to "the financial and operational problems caused by Erie's failure to pay you what you claimed for business interruption,"[4] along with "the recent legal action commenced by Sovereign Bank." In the Engagement Letter, Geisenberger refuses to "even venture a 'guesstimate' as to the amount of fees [Debtor] will incur in resolving problems both internal and external." The letter proposes that Debtor will receive monthly billings for legal services with fees calculated on a per hour basis.

About the time Geisenberger drafted the Engagement Letter, Debtor began negotiating with James Little ("Little") for the purchase of a majority interest in the company in exchange for $1.2 million. A final sale agreement was contingent on the successful negotiation of, among other things, an operating agreement and employment contracts for the Resslers. In the summer of 2007, the parties began negotiations on these agreements with discussions continuing into the fall. At the request of the Resslers, Little advanced $400,000 to Debtor to fund its ongoing operations pending the finalization of these agreements. Despite the cash infusion, Debtor's

---

[3]The Engagement Letter was submitted as an attachment to Debtor's Application to employ Geisenberger.

[4]Debtor's business was disrupted after a fire at Debtor's production facility in 2006.

3

creditors increased their threats to pursue legal action to collect on delinquent obligations. On October 1, 2007, Geisenberger sent correspondence to Little's attorney demanding payment of an additional $400,000 toward the purchase price of Debtor's stock and indicating that Little's "unconditional commitment" to purchase stock would be placed on Debtor's books as a "stock subscription receivable" if the payment were not made by a certain date. Geisenberger's letter set off a flurry of telephone conferences and meetings between the parties and their agents in an effort to finalize the necessary contracts and consummate the deal. In late November 2007, after he was informed of the existence of a competing purchase offer, Little withdrew from the negotiations and demanded repayment of the funds he had advanced. Instead of returning Little's deposit money, Debtor issued a stock certificate for 26,021 shares of its stock.

      Geisenberger advised the directors before they decided to issue the certificate for a minority interest in the company as consideration for the $400,000 advanced. He also drafted the stock certificate and the minutes that memorialized the decision. Geisenberger mailed the stock certificate to Little accompanied by a letter describing Debtor's rationale for its actions. At no time during his representation of Debtor in connection with the proposed sale of stock did Geisenberger investigate whether registration of the stock was required under Pennsylvania, Maryland or federal law, or whether the stock was exempt from registration. The certificate for 26,021 shares Geisenberger prepared and sent to Little stated that the shares issued had not been registered under federal or Pennsylvania law and included a restriction that the shares could not been sold unless they were registered or were transferred subject to an opinion of counsel that registration was not required.

Upon receipt of the stock certificate, Little's counsel sent a letter to Geisenberger asserting that the stock had not been properly registered and that its transfer was illegal. Little's counsel offered to return the certificate in exchange for the funds advanced plus interest. Debtor rejected this offer. Little responded by filing suit in the United States District Court for the District of Maryland against Debtor and the Resslers for violation of Maryland's securities law and "assumpsit for moneys had and received." After Debtor filed its bankruptcy petition, the suit was transferred to this Court and docketed as an adversary proceeding. Debtor filed a motion for summary judgment, which I granted in part. I dismissed the first count of the complaint finding that the shares were "covered" securities and, therefore, were exempt from registration under Maryland law. However, I also determined that, even though the shares did not have to be registered, Debtor was required to file Form D with the Securities and Exchange Commission and to comply with the notice filing requirements of the Maryland statute. Debtor had made no effort to comply with either requirement. Trial was held on the two remaining counts, and judgment was entered in favor of Little.[5]

Allegations in Little's complaint prompted the UST to request the Court to reexamine Geisenberger's appointment. In the Application, Debtor stated that Geisenberger was retained by Debtor "in early 2007" pursuant to the terms of the Engagement Letter and that all outstanding fees had been paid pre-petition. (App. ¶ 4.) Specific dates and amounts for these payments were not provided. The Application further disclosed that Geisenberger had been paid a retainer of $17,500 for future services and $2,000 for anticipated filing fees and other costs.

---

[5]In my March 19, 2010 Opinion, I found that Debtor had committed fraud or deceit in the sale of a security under the Maryland Securities Act ("MSA"), Md. Code Ann., Corps. & Ass'ns § 11-703, thus entitling Little to a judgment in the amount of $400,000 plus interest.

5

Case 1:08-bk-01878-MDF    Doc 505    Filed 06/08/10    Entered 06/08/10 15:59:22    Desc
Main Document      Page 5 of 14

As to his relationship with Debtor, creditors and other parties, the Application stated that Geisenberger and his firm had "no connection with the Creditors or any other party in interest or their respective attorneys in this proceeding." (App. ¶ 7). The Application was specifically noted that Geisenberger had "insisted" that Debtor's principals employ separate counsel to represent their interests. As an exhibit to the Application, Geisenberger executed a "declaration of disinterestedness" in which he declared under penalty of perjury that neither he nor his professional corporation "represent any interest adverse to Debtor or Debtor-in-Possession" and that he was "a disinterested person" who did not "represent or hold an interest adverse to the interest of the estate." No disclosures were made in the Application or the accompanying declaration concerning Geisenberger's prior representation of Debtor, including his role in the abortive attempt to sell a majority interest in the company, his role in trying to reach a workout agreement with Sovereign, his efforts to negotiate a real property lease, or his dealings with Erie regarding Debtor's insurance claim.

Within the ninety-day period immediately preceding the filing of its bankruptcy petition, Debtor paid Geisenberger professional fees for pre-petition services totaling $49,290. Specifically, Debtor made payments of $7,897 on March 7, 2008; $5,819 on April 4, 2008; $7,952 on April 30, 2008; and $27,622 on May 21, 2008. These payments were for services rendered by Geisenberger in connection with the sale of Debtor's stock to Little, the claims dispute with Erie, and the lease of the facility used for Debtor's milling operation. With the possible exception of the negotiations over the leasehold, each of these matters ultimately contributed to Debtor's decision to file its Chapter 11 case. Although they were listed in

6

Case 1:08-bk-01878-MDF    Doc 505    Filed 06/08/10    Entered 06/08/10 15:59:22    Desc
Main Document    Page 6 of 14

Debtor's Statement of Financial Affairs as payments made during the preference period, none of these payments was disclosed by Geisenberger in connection with his employment as counsel.

### III. Discussion

The UST's motion requests disqualification of Geisenberger as counsel for Debtor and disgorgement of his fees. Geisenberger's brief asserts that the conversion of the case has rendered the UST's motion moot. While Geisenberger is correct that he no longer can serve as counsel to the Debtor's Chapter 7 estate, his Application and the UST's motion are not moot. Unless his application is approved, Geisenberger may not retain the $17,500 he received as a pre-petition retainer for his services while the case was in Chapter 11.

The UST focuses her request for disqualification and disgorgement of fees on two alleged deficiencies: (1) Geisenberger's failure to fully disclose the fee payments he received during the year prior to the filing of the bankruptcy petition; and (2) his failure to fully disclose in the "declaration" his connections with Debtor, especially his acts and omissions in connection with the offer to sell Debtor's stock.

> A. *Did Geisenberger Comply with the Disclosure Requirements of 11 U.S.C. § 329(a) and Fed. R. Bankr. P. 2016(b)?*

Section 329(a), which governs the employment of attorneys by a debtor, states that "[a]ny attorney representing a debtor . . . shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a). The bankruptcy rules further provide that:

7

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. . . . A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

Fed. R. Bankr. P. 2016(b).

Read together, § 329(a) and Rule 2016(b) require an attorney to disclose all fees received within the year before a petition is filed for legal services rendered in contemplation of, or in connection with, the bankruptcy filing. *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 848 (B.A.P. 10th Cir. 1997). These provisions enable the Court to fulfill its responsibility to ensure that counsel is disinterested and that the compensation arrangements and the amounts paid are reasonable. *See Id.* at 848. "[T]he bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 844 (3d Cir. 1994).

The requirements of § 329 are mandatory. *In re Investment Bankers, Inc.*, 4 F.3d 1556, 1565 (10th Cir.1993). In a statement filed under this section, counsel is required to fully disclose the services rendered to the debtor pre-petition and the amounts received or paid for those services. "Coy, or incomplete disclosures [in a § 329(a) statement] are not sufficient." *In re Park-Helena Corp.*, 63 F.3d 877, 881 (9th Cir. 1995) (citations and internal brackets omitted). All compensation may be denied if services rendered and payments received pre-petition are not fully disclosed. *In re Futuronics Corp.,* 655 F.2d 463 (2d Cir.1981); *cert. denied,* 455 U.S. 941 (1982); *In re Arlan's Dept. Stores, Inc.,* 615 F.2d 925 (2d Cir.1979). *See also In re Film Ventures International, Inc.,* 75 B.R. 250, 252 (B.A.P. 9th Cir. 1987); *In re Kendavis Industries*

8

*International, Inc.,* 91 B.R. 742, 759 (Bankr. N.D. Tex. 1988); *In re Devers,* 33 B.R. 793, 799 (D.D.C.1983); *In re Kero-Sun, Inc.,* 58 B.R. 770, 778 (Bankr. Conn. 1986); *In re Meyer,* 50 B.R. 3, 4 (Bankr. S.D. Fla. 1985); *In re Hawaii General Corp.,* 35 B.R. 789, 792 (Bankr. D. Haw. 1983).

An attorney's obligations under § 329(a) and Rule 2016(b) are not fulfilled by scattering references to payments throughout a debtor's schedules and statements. "[I]t is not the court's job to search through the record to find all relevant facts relating to an attorney's employment. . . . It is counsel's duty to provide the court with the information necessary to determine whether to appoint counsel." *In re Smitty's Truck Stop*, 210 B.R. at 849 (citing *In re Maui 14K, Ltd.*, 133 B.R. 657, 660 (Bankr. D. Haw. 1991)); *In re Crimson Investments, N.V.*, 109 B.R. 397, 401 (Bankr. D. Ariz. 1989) (failure to disclose critical information to the court, to enable court to make informed decision regarding appointment of counsel, frustrates disclosure provisions of § 329 and Rule 2016). Thus, in *Smitty's Truck Stop*, the Bankruptcy Appellate Panel affirmed the Bankruptcy Court's decision to deny all compensation to debtor's counsel and to require disgorgement of fees previously received when those fees were not set forth in the applicant's 2016(b) disclosure, although the fee payments had been included in the debtor's statement of financial affairs.

If an attorney representing a debtor fails to comply with the disclosure requirements of § 329 and Rule 2016(b), he may be required to forfeit his right to receive compensation for those services and may be ordered to return fees already received. *In re Smitty's Truck Stop*, 210 B.R. at 848 (citing *Investment Bankers*, 4 F.3d at 1565); *Quiat v. Berger (In re Vann)*, 136 B.R. 863, 873 (D. Colo. 1992) (under abundant case law, noncompliance with Rule 2016(b) will support

9

the total denial of fees)); *In re Maui 14K, Ltd.*, 133 B.R. at 660 (failure of counsel to obey mandate of § 329 and Rule 2016 concerning disclosure is basis for denying compensation and ordering return of fees already paid); *In re Crimson Invs., N.V.*, 109 B.R. at 401 (same); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 575 (Bankr. N.D. Tex. 1986) (same); *In re Kero-Sun, Inc.*, 58 B.R. 770, 780-81 (Bankr. D. Conn. 1986) (same). The Court may sanction failure to disclose "regardless of actual harm to the estate." *In re Maui 14K Ltd.,* 133 B.R. at 660. Thus, in *Smitty's Truck Stop*, the Bankruptcy Appellate Panel held that the failure of a Chapter 11 debtor's attorney to disclose receipt of a pre-petition retainer in his Rule 2016(b) statement established sufficient cause to require disgorgement of the retainer and denial of all compensation.

Geisenberger admits to having failed to disclose in his Rule 2016(b) statement the four payments he received within the ninety days immediately preceding the filing of Debtor's bankruptcy petition. The Application does not disclose the payments or describe the services that were rendered for which these payments were received. The only means to obtain this information was through a review of the Statement of Financial Affairs, which only disclosed the amounts of the payments to Geisenberger's firm. Although Geisenberger did disclose that he had received a pre-petition retainer for future services and costs, his failure to disclose the fees received for pre-petition services during the year prior to the bankruptcy filing gave the false impression that the only fees that had been paid were the retainer. By omitting this information, Geisenberger failed to meet the disclosure requirements of § 329 and Rule 2016(b).

10

B. *Did Geisenberger Comply with the Disclosure Requirements of 11 U.S.C. § 327 and Rule 2014(a) in Connection with Debtor's Application for Approval of His Employment?*

In order to be employed by a debtor-in-possession, a professional must not hold or represent an interest adverse to the estate and must be disinterested. 11 U.S.C. § 327(a). To be "disinterested," a professional must not have an interest "materially adverse" to the interests of the estate. 11 U.S.C. § 101(14). When two entities have competing economic interests, each has an adverse interest to the other. *In re Florence Tanners, Inc.*, 209 B.R. 439, 445 (Bankr. E.D. Mich. 1997) (citations omitted). An attorney representing a Chapter 11 debtor-in-possession is required to represent the interests of the estate. Accordingly, he has an affirmative duty to disclose any actual or potential conflicts of interest he may have with the estate. *In re Smitty's Truck Stop, Inc.*, 210 B.R. at 850; *In re Amdura Corp.*, 139 B.R. 963, 978 (Bankr. D. Colo. 1992). If a professional has an actual conflict of interest, his employment may not be approved. *In re BH&P*, 949 F.2d 1300, 1315-16 (3d Cir. 1991). Further, if he has a potential conflict that is likely to ripen into an actual conflict, his employment should not be approved. *Id*.

To assist a bankruptcy court in determining whether a professional is disinterested, an employment application must be filed accompanied by "a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014(a). Professionals are responsible for fully disclosing all their connections to the parties described in Rule 2014(a). Incomplete disclosures may lead to sanctions even if the disclosures themselves, if they had been made, would have demonstrated that the professional was disinterested. *In re Condor Systems,*

11

*Inc.*, 302 B.R. 55, 69-70 (Bankr. N.D. Cal. 2003) (citing *In re Park-Helena Corp.*, 63 F.3d at 880. "The disclosure requirements of Rule 2014 do not give the professional the right to withhold information because it is not apparent to the professional that a conflict exists." *Id.*

The Court does not believe that Geisenberger intentionally failed to disclose his extensive pre-petition connections with Debtor. He simply does not seem to grasp the requirements of the statute and the rule. Geisenberger understood the inherent conflict that would have been present if he had agreed to represent both the Resslers and Debtor. Recognizing this problem, Geisenberger took pains to ensure that the Resslers obtained independent counsel. But what he failed to appreciate was his duty to disclose his representation of Debtor and the Resslers in a variety of matters prior to the bankruptcy filing, particularly in regard to the sale of Debtor's stock.

Geisenberger began representing Debtor approximately eighteen months before the petition was filed, and he formalized that representation a year before the filing. During that time he advised Debtor on several issues related to the company's financial distress, particularly through negotiations with Sovereign and Erie. He was actively involved in the negotiations for the sale of Debtor's stock to Little, including the arrangement whereby Little advanced $400,000 for operations while sale negotiations were pursued. When the sale fell through, Geisenberger provided legal advice concerning Little's demand for return of the funds advanced and drafted documents transferring shares representing a minority interest in the company to Little. Although the certificate he drafted specifically addressed registration requirements for future transfers, Geisenberger admitted that he had not investigated whether the transfer of shares to Little was exempt under applicable state or federal law. Geisenberger was not named as a defendant in the

12

suit filed in the Maryland district court, but several counts in the complaint alleged violations of Maryland securities law. By the time Little filed suit, Geisenberger knew that his advice to Debtors (or his failure to provide advice) about the terms of the sale and his participation in the ultimate decision to transfer a minority interest to Little were being questioned. All these facts should have been disclosed in his "declaration of disinterestedness."

Whether or not a professional is disinterested and may be employed as counsel for a debtor-in-possession is a separate question from whether the professional adequately disclosed all connections with the debtor. As discussed above, Geisenberger failed to adequately disclose his connections to Debtor. The next question is whether those connections, when revealed, demonstrated that Geisenberger held an interest adverse to the estate and was not disinterested. When the relevant connections were disclosed through proceedings in the bankruptcy case and in the Little Adversary, the presence of at least potential conflicts between the estate and Geisenberger became apparent. Based upon the information now on record in this case, I find that Geisenberger had an actual conflict of interest with the bankruptcy estate.

At the date of filing, Debtor's counsel had to decide whether the estate should continue to defend Little's suit or pursue settlement. It is difficult to see how Geisenberger could approach this decision objectively. To justify his prepetition legal advice, Geisenberger would be inclined to recommend defending Debtor's decision to transfer the shares as consideration for the $400,000 Little advanced. However, an objective review of Geisenberger's actions would disclose that he failed to investigate one of the pivotal issues in the suit – whether the stock offering was subject to state or federal securities laws. Geisenberger acknowledged that he provided no legal guidance to his client on this issue, although the very share certificate he

drafted stated that this was a relevant consideration. At the time the petition was filed, Geisenberger should have known that his interests no longer were aligned with the interests of the estate. As counsel for a debtor-in-possession Geisenberger had an obligation to reevaluate the decisions that were made leading up to the bankruptcy filing. As a participant in those decisions, it was impossible for him to review those decisions with disinterestedness.

## VI. Conclusion

"Where the professional maintains any connections proscribed by § 327(a) and does not disclose those connections, the attorney should expect nothing more than the denial of compensation requested and disgorgement of fees received." *In re Hot Tin Roof, Inc.*, 205 B.R. 1000, 1003 (B.A.P. 1st Cir. 1997) (citing cases). Having found that Geisenberger failed to make a full disclosure of pre-petition fees received and of all connections with Debtor, and that he was not qualified to represent Debtor because of the existence of a interest materially adverse to the interests of the estate, I find that it is appropriate to disapprove the Application and require the disgorgement of the fee retainer of $17,500.

An appropriate Order will be entered.

**By the Court,**

*Mary D. France*
Chief Bankruptcy Judge

Date: June 8, 2010

*This document is electronically signed and filed on the same date.*