# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JACQUES H. GEISENBERGER, JR., P.C.** : | **CIVIL ACTION NO. 1:10-CV-01660** |
| : | |
| : | **(Judge Conner)** |
| **Appellant** : | |
| : | |
| v. : | |
| : | |
| **ROBERTA A. DeANGELIS UNITED STATES TRUSTEE** : | |
| : | |
| **Appellee** : | |

## MEMORANDUM

Presently before the court is an appeal from the order of the United States Bankruptcy Court for the Middle District of Pennsylvania, dated June 8, 2010, disqualifying Jacques H. Geisenberger, Jr. ("Geisenberger") and his law firm, Jacques H. Geisenberger, Jr., P.C.,[1] from representing debtor Ressler Hardwoods & Flooring, Inc. ("Debtor") and directing the disgorgement of $ 17,500 in professional fees. Geisenberger claims the Bankruptcy Court erred in three respects: (1) by misconstruing the provisions of 11 U.S.C. § 327 and Bankruptcy Rule 2014(a); (2) by misconstruing the relationship between the provisions of 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b); and (3) by requiring the disgorgement of $ 17,500 in fees to the bankruptcy estate. The court has jurisdiction to hear this appeal pursuant to

---

[1] The court will refer to both Jacques H. Geisenberger, Jr. and Jacques H. Geisenberger, J.R., P.C., as "Geisenberger." The Bankruptcy Court found, and this court agrees, that there is no reason to distinguish between the two. (See Doc. 2, Ex. 44, at 1 n.1).

28 U.S.C. § 158(a)(1). See In re BH & P, Inc., 949 F.2d 1300, 1307 (3d Cir. 1991). For the reasons that follow, the court will affirm the order of the Bankruptcy Court.

## I. Statement of Facts[2]

### A. Geisenberger's Pre-Petition Relationship with Debtor

Debtor is a flooring manufacturer owned and operated by Kenneth and Karen Ressler and their son Keith Ressler (collectively the "Resslers"). Beginning in October 2006, Geisenberger represented Debtor in a variety of business matters including: (1) an insurance dispute with Erie Insurance Company ("Erie"); (2) the lease of property used in Debtor's milling operations; (3) a loan default with Sovereign Bank ("Sovereign"); (4) the sale of stock to CQ (one of Debtor's vendors); and (5) the sale of stock to James Little ("Little").[3] (Bankr. Doc. 415, at 36-46, 62-68).[4] The attorney-client relationship was not formalized in writing until May 7, 2007, when Geisenberger sent a letter ("the engagement letter") to Debtor. (Id. at 35). The engagement letter refers to "financial and operational problems" caused

---

[2] Geisenberger disputes the finding of facts set forth in Judge France's opinion. (See Doc. 8, at 2). He argues that facts used by Judge France were not taken from the hearing conducted before her on the Trustee's amended motion to disqualify and disgorge fees on December 10, 2009. (Id.) The court has reviewed the record and finds that Judge France's factual findings are supported by the evidence presented at the December 10, 2009, hearing.

[3] Geisenberger never represented the Resslers personally.

[4] Citations to "Bankr. Doc." refer to Debtor's underlying bankruptcy proceeding In re Ressler Hardwoods & Flooring Inc., No. 1:08-BK-01878 (Bankr. M.D Pa.)

2

by the Erie insurance dispute and the legal dispute with Sovereign Bank. (Id. Trustee's Ex. 1).

## B. Geisenberger's Pre-Petition Relationship with Little

In spring 2007, Little entered into negotiations with the Resslers for a controlling interest in Ressler Hardwoods & Flooring, Inc. (Id. Trustee's Ex. 4 ¶ 9). The parties reached an agreement on the purchase price of the stock, but a final agreement remained contingent on the successful negotiation of a number of secondary matters. Little alleges he advanced $ 400,000 to Debtor during the pendency of these negotiations. (Id. Trustee's Ex. 4 ¶¶ 11-12). A dispute arose and Little demanded Debtor return the $ 400,000. (Id. Trustee's Ex. 4 ¶¶ 13-14). Geisenberger denies any involvement in these initial negotiations.

Debtor did not return the $ 400,000. (Id. Trustee's Ex. 4 ¶ 15). Instead, Debtor issued Little a stock certificate for 26,201 shares of its common stock. (Id. Trustee's Ex. 4 ¶ 17). Geisenberger advised Debtor's board of directors prior to their vote to issue the stock certificate. Geisenberger also drafted minutes of the board meeting memorializing the decision. (Id. at 64-66). After the board's approval, Geisenberger drafted the stock certificate and sent it to Little. (Id.) The stock certificate stated that it had not been registered and that the shares could not be sold unless they were registered or were transferred, subject to an opinion of counsel that no registration was required. (Id. Trustee's Ex. 6). Geisenberger did not investigate whether federal or state law required registration of the stock prior to issuance of the certificate. (Id. at 67-68).

3

Case 1:08-bk-01878-MDF    Doc 588    Filed 09/23/11    Entered 09/27/11 10:04:19    Desc
Main Document    Page 3 of 20

On December 19, 2007, Little's attorney sent a letter to Geisenberger asserting that the stock had not been properly registered and that its transfer was illegal. (Id. Trustee's Ex. 4 ¶ 18). Little's counsel offered to return the certificate in exchange for the $ 400,000 advanced by Little, plus interest. (Id.) Debtor rejected the offer. Little responded by filing a three-count lawsuit against Debtor and the Resslers on July, 22, 2008, in the United States District Court of Maryland alleging: (1) violation of Maryland securities law for failure to register the securities ("Count I"); (2) violation of Maryland securities law for committing securities fraud ("Count II"); and (3) assumpsit for moneys had and received ("Count III"). (Id. Trustee's Ex. 4).

### C. **Debtor's Bankruptcy Filing**

Debtor filed a voluntary Chapter 11 bankruptcy petition on May 27, 2008.[5] (Id. at 1). On the same day, Debtor filed an application to employ Geisenberger ("the application") as its bankruptcy counsel under 11. U.S.C. § 327(a). (Id. Trustee's Ex. 1). Debtor noted on the application that Geisenberger previously advised Debtor in connection with its financial affairs and attached a copy of the engagement letter as an exhibit to the application. (Id.) Debtor disclosed on the application that it had paid Geisenberger a $ 17,500 retainer for future services and $ 2,000 to cover filing fees and other costs. (Id.) Debtor stated it had paid all previous billings in full, but did not provide the dates or amounts of the previous

---

[5] Debtor's Chapter 11 case was converted to Chapter 7 on January 26, 2010. (Bankr. Doc. 390).

4

billings.[6] (Id.) Finally, Debtor stated Geisenberger had "no connection with the Creditors or any other party in interest or their respective attorneys in this proceeding." (Id.) Geisenberger filed a declaration of disinterestedness ("declaration") with the application as required under Federal Rule of Bankruptcy Procedure 2014. Geisenberger averred that he was disinterested and did not represent or hold an interest adverse to Debtor. (Id.)

On June 6, 2008, Geisenberger filed a statement of attorney compensation as required by 11. U.S.C. § 329 and Bankruptcy Rule 2016(b). (Bankr. Doc. 36). Geisenberger disclosed that Debtor had paid him a $ 17,500 retainer for future costs and $ 2,000 to cover filing fees and other costs, but failed to disclose any other pre-petition payments. (Id.) Based on the above filings and the lack of any objections, the Bankruptcy Court approved Geisenberger's application on June 26, 2008. (Bankr. Doc. 76).

### D. Little's Lawsuit

Subsequent to Debtor filing for bankruptcy, Little's action was transferred to the Bankruptcy Court and docketed as an adversary proceeding. Little v. Ressler Hardwoods and Flooring, Inc., Adv. No. 1-08-BK-00109 (M.D. Pa.) (Doc. 40). On March 31, 2009, the Bankruptcy Court granted summary judgment on Count I for

---

[6] Debtor made the following payments to Geisenberger during the ninety-day period preceding filing for bankruptcy: (1) $ 7,897.96 on March 7, 2008; (2) $ 5,819.81 on April 4, 2008; (3) $ 7,952.37 on April 30, 2008; and (4) $ 27,622.50 on May 21, 2008. (Id. at 56-60; Id. Trustee's Ex. 3). Debtor disclosed these payments in the statement of financial affairs. (Id. Trustee's Ex. 3). Geisenberger did not prepare Debtor's statement of financial affairs. (Id. at 56).

5

Debtor and the Resslers, but denied summary judgment on Counts II and III. Id. (Doc. 53). After conducting a trial, the Bankruptcy Court found in favor of Little on the remaining counts and entered judgment in the amount of $ 400,000 plus interest. Id. (Doc. 111). Geisenberger did not represent Debtor or the Resslers in the lawsuit. (Doc. 8, at 2).

### E. **Trustee's Motion to Disqualify Geisenberger and Disgorge Fees**

On March 31, 2009, after learning of the allegations in the Little Complaint, the United States Trustee filed a motion to disqualify Geisenberger and disgorge all professional fees he received in connection with Debtor's bankruptcy case. (Doc. 2, Ex. 20). The Trustee filed an amended motion to disqualify and disgorge fees on May 13, 2009. (Doc. 2, Ex. 24). The Trustee's motion focused on alleged deficiencies in Debtor's application and Geisenberger's declaration and statement of attorney compensation including: (1) Geisenberger's failure to disclose fee payments received in the year proceeding Debtor's filing for bankruptcy, and (2) Geisenberger's failure to fully disclose his pre-petition connections with Debtor, in particular his role in the issuance of the stock certificate to Little. (Id.) The Bankruptcy Court conducted a hearing on the matter on December 10, 2009.

On June 8, 2010, the Bankruptcy Court granted the Trustee's amended motion, disqualifying Geisenberger and requiring him to disgorge the $ 17,500 fee retainer he had received from Debtor. (Doc. 2, Ex. 44, at 14). The Bankruptcy Court held that: (1) Geisenberger failed to disclose pre-petition fee payments as required by 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy 2016(b); (2)

6

Geisenberger failed to comply with the disclosure requirements of 11. U.S.C. § 327 and Rule 2014(a); and (3) Geisenberger was not disinterested and held an interest adverse to the estate. On June 12, 2010, Geisenberger appealed the Bankruptcy Court's order. (Doc. 1). The appeal is ripe for review.

## II.     Standard of Review

An appeal from a Bankruptcy Court's order places the District Court in the posture of an appellate tribunal, requiring it to accord the appropriate level of deference to the decision of the Bankruptcy Judge. See In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989); see also FED. R. BANKR. P. 8013. The district court will not disturb the resolution of an issue committed to the discretion of the Bankruptcy Court unless a manifest abuse of that discretion is apparent. See Sharon Steel, 871 F.2d at 1222-23. The court reviews the factual findings of the Bankruptcy Court for clear error and reviews its legal conclusions *de novo*. Id. The determination of an attorney's disinterestedness is a factual finding reviewed for clear error. See Fed. Ins. Co. v. Grace, Nos. 04-844, 04-845, 2004 WL 5517843, at *4 n.8 (D. Del. Nov. 22, 2004). The Bankruptcy Court's decision to disqualify counsel and to disgorge attorney fees is reviewed for abuse of discretion. In re BH & P, Inc., 949 F.2d 1300, 1313 (3d Cir. 1991); Hale v. U.S. Tr., 509 F.3d 1139, 1147 (9th Cir. 2007).

### III. Discussion

#### A. Disclosure Requirements of 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b)

Section 329(a) of Title 11 of the United States Code creates mandatory disclosure requirements for all attorneys employed by a debtor. Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers), 4 F.3d 1556, 1565 (10th Cir. 1993). Section 329(a) provides:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). Federal Rule of Bankruptcy Procedure 2016(b) further provides that "[e]very attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee . . . the statement required by § 329 of the Code . . . ." FED. R. BANKR. P. 2016(b). The purpose of these provisions is to allow the Bankruptcy Court to closely scrutinize fees paid to the debtor's attorney "lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994) (citation omitted).

Disclosures made under Section 329(a) and Rule 2016(b) must be "precise and complete, with no excuses, such as inadvertence, neglect or ignorance." In re

8

Berg, 356 B.R. 378, 381 (Bankr. E.D. Pa. 2006) (quotations and citation omitted); see also Neben & Starrett v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 881 (9th Cir. 1995) (noting that "coy or incomplete disclosures" are insufficient). Disclosure of pre-petition payments on a debtor's statement of financial affairs does not satisfy the disclosure requirements of § 329 and Rule 2016(b). See Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.), 210 B.R. 844, 849 (10th Cir. 1997). If pre-petition payments are not fully disclosed, all compensation may be denied. See id. at 848 (citing In re Investment Bankers, Inc., 4 F.3d at 1565); Quiat v. Berger (In re Vann), 136 B.R. 863, 873 (D. Colo 1992) (noting that abundant case law supports the total denial of fees for non-compliance with Rule 2016(b); In re Maui 14k, Ltd., 133 B.R. 657, 660 (Bankr. D. Haw. 1991). Compensation may be denied for failure to disclose under § 329 "regardless of actual harm to the estate." In re Maui, 133 B.R. at 660 (citing In re Futuronics Corp., 655 F.2d 463, 471 (2d Cir. 1981)).

In the instant case, the Bankruptcy Court concluded that Geisenberger failed to meet the disclosure requirements of § 329 and Rule 2016(b). The Bankruptcy Court found that Geisenberger failed to disclose four payments in his Rule 2016(b) statement that he received in the ninety days preceding the filing of Debtor's bankruptcy petition. (Doc. 2, Ex. 44, at 10; Bankr. Doc. 415, Trustee's Ex. 3). Geisenberger does not contest that he received the payments or that the payments were not disclosed in his Rule 2016(b) filing. (See Doc. 8, at 10). Instead, Geisenberger argues that the amounts were disclosed in Debtor's statement of

9

financial affairs and that the issue of non-disclosure was not raised as a concern until the Trustee filed her motion to disqualify. (Id. at 10-11).

The Court concludes that the Bankruptcy court did not err. Disclosure in the debtor's statement of financial affairs is insufficient to meet an attorney's obligations under § 329(a) and Rule 2016(b). See In re Smitty's Truck Stop, 210 B.R. at 848-49. Geisenberger is correct that he, unlike the attorney in In re Smitty, disclosed the pre-petition retainer on his application. (Doc. 8, at 14). This fails to negate, however, Judge France's finding that Geisenberger's "failure to disclose the fees received for pre-petition services during the year prior to the bankruptcy filing gave the false impression that the only fees that had been paid were the retainer." (Doc. 2, Ex. 44, at 10).

Section 329 does not merely require disclosure of pre-petition retainers. Instead, § 329 requires the disclosure of payments "for services rendered or to be rendered *in contemplation of or in connection with* the [bankruptcy] case." 11. U.S.C. § 329(a) (emphasis added); see also In re Gage, 394 B.R. 184, 194 (Bankr. N.D. Ill. 2008); In re Mayeaux, 269 B.R. 614, 622 (Bankr. E.D. Tex. 2001). The pre-petition payments made to Geisenberger were intimately connected to matters that ultimately contributed to Debtor's decision to file for bankruptcy including the Erie insurance dispute, the Sovereign Bank loan default, and the issuance of stock to Little. Therefore, the Bankruptcy Court did not err in holding these payments needed to be disclosed in the application.

10

Geisenberger's argument that the issue of non-disclosure under § 329 was not raised by either the Trustee or the Bankruptcy Court until nearly ten months after filing is of no moment. (See Doc. 8, at 10-11, 15; Doc. 16, at 4). The plain language of § 329 and Rule 2016(b) clearly places the duty on the professional to make the necessary disclosures directly to the Bankruptcy Court.[7] In re Smitty, 210 B.R. at 849 (concluding that it was the duty of counsel to provide all necessary information to the court). Thus, the Bankruptcy Court did not err in holding it was insufficient for Geisenberger to merely disclose the pre-petition retainer on the Application.

### B. Disclosure and Disinterestedness Requirements of 11 U.S.C. § 327 and Rule 2014(a)

Section 327(a) of Title 11 of the United States Code states that a professional employed by a debtor-in-possession must not hold or represent an interest adverse to the estate and must be disinterested. 11 U.S.C. § 327(a). Federal Rule of Bankruptcy Procedure 2014(a) requires professionals to file an employment application accompanied by "a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee" to assist the bankruptcy court in determining whether a professional is disinterested. FED. R. BANKR. P. 2014(a).

---

[7] Geisenberger's waiver argument is also ineffectual as a defense to his failure to disclose under § 327.

11

The requirements of § 327 and Rule 2014 are strictly enforced. Smith v. Marshall (In re Hot Tin Roof, Inc.), 205 B.R. 1000, 1003 (1st Cir. 1997). It is the responsibility of the professional to make "full, candid and complete disclosure." In re B.E.S. Concrete Prods., Inc., 93 B.R. 228, 237 (Bankr. E.D. Cal. 1988). See In re TJN, Inc., 194 B.R. 400, 403 (Bankr. D. S.C. 1996) (stating that it is not the responsibility of the United States Trustee or the bankruptcy court to "ferret out facts" which the Bankruptcy Rules plainly require attorneys to disclose). Professionals must fully disclose *all* their connections to the parties listed in Rule 2014. See In re Condor Sys., Inc., 302 B.R. 55, 70 (Bankr. N.D. Cal. 2003) (concluding that a professional cannot withhold information because it is not apparent to the professional that a conflict exists); In re EWC, Inc., 138 B.R. 276, 280 (Bankr. W.D. Okl. 1992) (noting that professionals "cannot pick and choose which connections are irrelevant or trivial"). A professional may be sanctioned for incomplete disclosure even if proper disclosure would have demonstrated the professional was disinterested. In re Condor, 302 B.R. at 69-70. The purpose of the information provided by the professional under Rule 2014(a) is to allow the bankruptcy court to "preserve integrity of judicial process, guard against potential conflicts, address actual conflicts, and ensure that attorney is primarily concerned with estate's best interest." Halbert v. Yousif, 225 B.R. 336, 346 (E.D. Mich. 1998) (citations omitted).

In the instant case, the Bankruptcy Court found that Geisenberger failed to disclose his extensive pre-petition connections with Debtor as required under § 327

12

and Rule 2014(a). The record amply reflects that Geisenberger failed to disclose all of his extensive pre-petition connections to Debtor or Debtor's creditors.[8] (Compare Doc. 2, Ex. 1 with Bankr. Doc. 415, at 36-70). For example, the application does not reveal Geisenberger's involvement in issuing the stock certificate to Little. (Compare Doc. 2, Ex. 1 with Bankr. Doc. 415 at 64-68). Geisenberger argues that his involvement in the Little litigation was disclosed in the 341 Meeting held on July 2, 2008. (See Doc. 8, at 6-8). This meeting, however, occurred *after* the Application was approved on June 26, 2008. Furthermore, Geisenberger ignores abundant case-law that places the burden squarely on the professional to plainly, openly, and timely, disclose all necessary information directly to the bankruptcy court. See In re TJN, 194 B.R. at 403; Rome v. Braunstein (In re Chestnut Hill Mort., Corp.), 158 B.R. 547, 551 n.3 (D. Mass. 1993) (observing that it is not the job of the bankruptcy judge to review all documents in the file to determine whether the professional's affidavit is truthful and comprehensive). Thus, the Bankruptcy Court did not err in concluding that Geisenberger breached his disclosure requirements under § 327(a) and Rule 2014(b).[9]

---

[8] The court agrees with the Bankruptcy Court that Geisenberger's failure to disclose his extensive pre-petition connections with Debtor is based on his failure to grasp the requirements of § 327 and Rule 2014(a) and not bad-faith. Good-faith or negligence, however, does not excuse a failure to disclose. Halbert, 225 B.R. at 346.

[9] The Bankruptcy Court's opinion contains an exhaustive list of the connections that Geisenberger failed to disclose. (See Doc. 2, Ex. 44, at 12-13).

A separate and distinct inquiry from whether Geisenberger adequately disclosed his pre-petition connections with Debtor is whether, when revealed, these pre-petition connections demonstrate that Geisenberger held an interest adverse to the bankruptcy estate and was not disinterested. A professional is disinterested if he or she "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(c); see also In re Black Hills Greyhound Racing Ass'n, 154 B.R. 285, 292 (D. S.D. 1993). If an actual conflict of interest exists, the bankruptcy court must deny the employment application. See In re BH&P, 949 F.2d 1300, 1315-16 (3d Cir. 1991). Generally, a bankruptcy court must also deny the employment application if a potential conflict exists. Id.

The Bankruptcy Court did not clearly err in finding that Geisenberger had an actual conflict with the bankruptcy estate. When Debtor filed for bankruptcy on May 27, 2008, the Little litigation was still pending. The Bankruptcy Court reasoned that Geisenberger could not provide objective legal advice to Debtor on whether to defend Little's suit or pursue settlement because of his own personal involvement in the lawsuit, i.e. his issuance of the stock certificate to Little without investigating whether the stock was subject to state or federal securities law. (Doc. 2, Ex. 44, at 13; Bankr. Doc. 415, at 64-68). The Bankruptcy Court noted "[a]s counsel for a debtor-in-possession Geisenberger had an obligation to reevaluate the decisions that were made leading up to the bankruptcy filing. As a participant in

14

those decisions, it was impossible for him to review those decisions with disinterestedness." (Id. at 14).

Geisenberger makes two primary objections to the Bankruptcy Court's conclusion. First, Geisenberger argues that his role in the issuance of the stock certificate is irrelevant because the Bankruptcy Court dismissed Count I of Little's complaint—relating to the registration of the stock. (See Doc. 8, at 2-3; Doc. 16, at 2). The relevant inquiry, however, is whether Geisenberger had a conflict of interest with the estate at the time he *filed* the application with the Bankruptcy Court on May 27, 2008, or on any subsequent date.[10] See 11 U.S.C. § 327(a); see also Needler v. Rendlen (In re Big Mac Marine, Inc.), 326 B.R. 150, 154-55 (8th Cir. 2005). Geisenberger clearly had a conflict of interest on the date the application was filed. Little's claim that Debtor had violated the Maryland Securities Act by failing to register the securities before issuing the stock certificate, which was drafted by Geisenberger, was not dismissed until March 31, 2009. It is plainly germane that Geisenberger held an interest adverse to the bankruptcy estate for the first ten

---

[10] Geisenberger misconstrues Judge France's statements at the December 10, 2009, hearing. (See Doc. 8, at 2-3). It is evident from the full transcript of the hearing and from her opinion that Judge France recognized the relevance of Geisenberger's role in the issuance of stock to the Trustee's motion to disqualify and disgorge fees.

15

months of his representation.[11] Moreover, this actual conflict of interest did not dissipate on March 31, 2009. Geisenberger remains potentially liable to Debtor for his role in the issuance of the stock certificate to Little due to his failure to adhere to the notice filing requirements of the Maryland Securities Act and his failure to file a Form D with the SEC as required under SEC Regulation D.[12]

Second, Geisenberger asserts that he was able to approach the settlement issue objectively in light of the fact that "Debtor had no funds, or source of funds to pursue settlement" and "Little at best [was] an unsecured creditor." (Doc. 8, at 8). Inherently, all entities or individuals who file for bankruptcy under Chapter 11 suffer from some form of financial distress. Many debtors, nonetheless, successfully settle lawsuits while in bankruptcy. See, e.g., Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 643 (3d Cir. 2006) (approving a settlement between a corporation who had filed for bankruptcy under Chapter 11 and a tort claimant);

---

[11] Geisenberger essentially argues that this court should ignore his role in the issuance of the stock certificate because Little ultimately recovered only on his claims for fraud in the inducement and assumpsit. As Geisenberger notes in his reply brief "[t]wenty-twenty 'hindsight' is a wonderful teacher." (Doc. 16, at 3). At the time of filing, Geisenberger could not have known with absolute certainty that the Bankruptcy Court would dismiss Little's claim relating to Debtor's failure to register the stock.

[12] Debtor may be disqualified from making future offerings under SEC Regulation D and faces possible criminal sanctions under 15 U.S.C. § 77x as a result of Geisenberger's failure to file a Form D with the SEC. See 15 U.S.C. § 77x; Chanana's Corp. v. Gilmore, 539 F. Supp. 2d 1299, 1303-04 (W.D. Wash. 2003). Additionally, Geisenberger's failure to adhere to the notice requirements of the Maryland Securities Act exposes Debtor to a variety of enforcement actions. See MD. CODE ANN. CORPS. & ASS'NS § 11-702(b).

16

see also FED. R. BANK. P. 9019 (specifically allowing courts to approve a "compromise or settlement" on motion by the trustee). Even if the possibility of settlement was remote, Geisenberger had an obligation to reevaluate the decisions made by Debtor prior to the bankruptcy filing and to inform Debtor about all *possible* options. As a key participant in many of Debtor's pre-bankruptcy decisions—particularly the issuance of the stock certificate to Little—Geisenberger could not provide Debtor with a candid, disinterested evaluation of all possible options. Thus, the Bankruptcy Court did not clearly err in finding that Geisenberger had an actual conflict of interest with the bankruptcy estate.

### C. Disqualification and Disgorgement

Finally, Geisenberger asserts that the Bankruptcy Court erred in ordering the full disgorgement of the pre-petition fees. Violation of the disclosure requirements of 11 U.S.C. §§ 327 and 329 and Rules 2014 and 2016 justifies disqualification of a professional and denial of compensation, "regardless of whether the undisclosed connections or fee arrangements were materially adverse to the interests of the estate or were de minimis." In re EWC, Inc., 138 B.R. at 280 (citing cases); see also In re Hot Tin Roof, Inc., 205 B.R. at 1003; In re Waldo, 417 B.R. 854, 893-94 (Bankr. E.D. Tenn. 2009) (observing that bankruptcy courts have "inherent power to sanction parties for improper conduct"); In re Vann, 136 B.R. at 873 (observing that abundant case law allows a bankruptcy court to deny all fees for failure to comply with Rule 2016(b)). In the instant case, the Bankruptcy Court found that Geisenberger failed to make full disclosure of pre-petition fees and of all

17

connections with Debtor. (Doc. 2, Ex. 44, at 14). Therefore, the Bankruptcy Court was well within its discretion to disqualify Geisenberger and disgorge the pre-petition retainer.[13]

In addition to the non-disclosures, the Bankruptcy Court also found that Geisenberger was not a disinterested person and held an interest adverse to the estate. (Id.) A bankruptcy court must disqualify a professional who is not disinterested or who holds an interest adverse to the bankruptcy estate. See 11 U.S.C. § 327; In re Harold & Williams Dev. Co., 977 F.2d 906, 911 (4th Cir. 1992). Under 11 U.S.C. § 328(c), a bankruptcy court also has discretion to deny compensation, in whole or in part, sought by professional whose employment was erroneously approved. See 11 U.S.C. § 328(c); Kravit, Gass & Weber, S.C. v. Michel (In re Crivello), 134 F.3d 831, 837 (7th Cir. 1998). Therefore, Bankruptcy Court

---

[13] Geisenberger attempts to distinguish the cases cited by the Bankruptcy Court, noting that many of the applicants in these cases were "given an opportunity to attempt to salvage their fees or were granted substantial fees up to a point." (Doc. 8, at 10). It is not this court's role, however, to engage in a *de novo* reassessment of the Bankruptcy Court's weighing of the equities. It is within the Bankruptcy Court's authority to disgorge the entire pre-petition retainer as a sanction for failing to make full disclosures under 11 U.S.C. §§ 327 and 329 and Rules 2014 and 2016. See, e.g., In re Smitty's Truck Stop, Inc., 210 B.R. 844 at 851.

18

acted within its discretion under § 328(c) to disqualify Geisenberger and disgorge the pre-petition retainer.[14]

## IV. Conclusion

For the reasons set forth above, this court will affirm the June 8, 2010, order of the Bankruptcy Court.

An appropriate order is attached.

          S/ Christopher C. Conner
          CHRISTOPHER C. CONNER
          United States District Judge

Dated:       September 23, 2011

---

[14] The Bankruptcy Court did not cite 11 U.S.C. §328(c) as a basis for its decision to disgorge fees. Nonetheless, this court, exercising appellate jurisdiction, may affirm on this basis. See Oss Nokalva, Inc. v. European Space Agency, 617 F.3d 756, 761 (3d Cir. 2010) ("It is an accepted tenet of appellate jurisdiction that we may affirm a judgment on any ground apparent from the record, even if the district court did not reach it." (internal citation and quotation omitted)).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JACQUES H. GEISENBERGER, JR., P.C.** | : | CIVIL ACTION NO. 1:10-CV-01660 |
| | : | |
| | : | **(Judge Conner)** |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| **ROBERTA A. DeANGELIS UNITED STATES TRUSTEE** | : | |
| | : | |
| Appellee | : | |

## **ORDER**

AND NOW, this 23rd day of September, 2011, upon consideration of the bankruptcy appeal filed by Appellant (Doc. 1), and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that:

1. The June 8, 2010, order of the United States Bankruptcy Court for the Middle District of Pennsylvania in the case docketed as Bankruptcy Petition No. 1:08-BK-01878 is AFFIRMED.

2. The Clerk of Court is directed to CLOSE this appeal.

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge